COURT OF APPEALS OF VIRGINIA

Present:   Judges Fulton, Callins and Senior Judge Humphreys
Argued at Christiansburg, Virginia

<div style="transform: rotate(-90deg)">UNPUBLISHED</div>

ANTWAN DOMINIQUE THOMAS

                                                    MEMORANDUM OPINION* BY
v.          Record No. 0815-24-3                     JUDGE JUNIUS P. FULTON, III
                                                         SEPTEMBER 16, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PATRICK COUNTY
Marcus A. Brinks, Judge

Samantha Offutt Thames, Senior Appellate Counsel (Virginia
Indigent Defense Commission, on briefs), for appellant.

Sheri H. Kelly, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


At a revocation hearing, the trial court found Antwan Dominique Thomas guilty of

violating the conditions of his supervised probation by: (1) failing to report to his probation

officer as instructed, (2) unlawfully using a controlled substance, (3) absconding from

supervision, and (4) failing to pay court-ordered restitution.  For these violations, the trial court

revoked Thomas's two previously suspended sentences totaling 34 years and 8 months and

resuspended all but one year.  On appeal, Thomas alleges the trial court erred in finding that he

violated a special condition of his probation by "not yet paying" any restitution.  He also alleges the

trial court erred in imposing a one-year active prison sentence for his probation violations.  Finding

merit in the first allegation, we reverse and remand for resentencing.

---

*This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

In May 2015, based on guilty pleas, the trial court convicted Thomas of two counts of distributing a Schedule I or II controlled substance.[2]  By its order entered on August 5, 2015, the trial court sentenced Thomas to 20 years in prison for each conviction, but it suspended 14 years 9 months as to the first and all 20 years as to the second.  For each suspended sentence, the trial court imposed the same conditions: it ordered Thomas to: (1) "be of good behavior and under the supervision of a [p]robation [o]fficer" for five years after release from incarceration, (2) obtain his GED while incarcerated or on probation, (3) pay the court costs, (4) pay a fine of $1,000, (5) "pay restitution in the amount of $600.00[3] with interest from October 10[], 2013 until paid in full" and before the payment of fines and costs, and (6) complete the Therapeutic Community Program.  Thereafter, Thomas was placed in the custody of the Department of Corrections where he remained until he was released to community supervision on August 3, 2020.

On June 6, 2023, Thomas's probation officer filed with the trial court a major violation report (MVR).  The report stated that Thomas's "plan of supervision" was to comply with the "standard conditions of # 1 through # 11 and pay on the fines and cost[s]."  In addition, the

---

[1] "On appeal, '[w]e "view the evidence received at [a] revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it."'"  *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (alterations in original) (quoting *Johnson v. Commonwealth*, 296 Va. 266, 274 (2018)).  Applying this familiar principle of appellate review, we will state the facts "in the light most favorable to the Commonwealth, the prevailing party at trial."  *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

[2] The record on appeal only contains a conviction order relating to the first count of distributing a Schedule I or II controlled substance (Case Number: CR14-512).  The sentencing order, however, referred to both counts and memorialized the trial court's findings of guilt as to both charges.  In addition, the transcript of the May 1, 2015 hearing reflects that Thomas pleaded guilty to and was convicted of both counts.

[3] The record before us indicates that the restitution was to be paid to the Patrick County Sheriff's Office to reimburse them for "undercover drug buy money."

probation officer informed the trial court that, on October 2, 2021, Thomas was arrested in an adjacent jurisdiction for six new drug distribution offenses and two firearm-related offenses that he allegedly committed on October 1, 2021. The probation officer also advised that Thomas later pleaded guilty to one amended charge of possessing a Schedule I or II controlled substance and was scheduled to be sentenced on July 20, 2023. Accordingly, the probation officer alleged that Thomas had violated the terms and conditions of his probation by failing to "obey all [f]ederal, [s]tate[,] and local laws and ordinances" (Condition 1) and "unlawfully us[ing], possess[ing] or distribut[ing] controlled substances or related paraphernalia" (Condition 8). The probation officer also requested a revocation hearing.

Later, a different probation officer filed with the trial court a major violation addendum (MVA) advising that, on July 20, 2023, the trial court in the adjacent jurisdiction sentenced Thomas to five years in prison with three years and two months suspended on the condition that he successfully complete three years of supervised probation. The probation officer also advised that Thomas had been continuously incarcerated from his arrest until he was released to community supervision on July 24, 2023.

On October 2, 2023, the trial court held a revocation hearing. After considering the evidence and argument of counsel, the trial court found Thomas to be in violation of the terms and conditions of his probation. It then revoked Thomas's previously suspended sentences totaling 34 years 9 months and resuspended all but 1 month.

On October 22, 2023, Thomas again was released from incarceration and returned to supervised probation. Thereafter, he did not report to his probation officer as instructed. Then, when he reported to probation on November 16, 2023, as instructed, he submitted a urine sample that tested positive for cocaine and methamphetamine. Thomas also failed to report to probation for a follow-up meeting on December 13, 2023.

In response to these violations, a second probation revocation proceeding was initiated. The probation officer filed another MVR with the trial court on January 8, 2024. The report informed the trial court of Thomas's failures to report and his positive drug test. The report also noted that, "[as] of January 8, 2024," Thomas had made no restitution payments and still owed $600. Accordingly, the probation officer alleged that Thomas had violated: (1) Condition 4 of his probation by failing to report to her office, (2) Condition 8 by unlawfully using, possessing, or distributing controlled substances, and (3) the restitution condition by failing to pay any sum as of January 8, 2024. The probation officer also asked that Thomas "be returned" to the trial court "to determine whether his probation should be revoked."

Afterwards probation officers attempted to locate and contact Thomas. On January 26, 2024, a surveillance officer visited Thomas's residence. Finding no one at home, the officer left a door tag instructing Thomas to contact the probation officer. The probation officer also mailed to Thomas a postcard informing him of his new office appointment on February 8, 2024. Then, when Thomas failed to keep that appointment, the probation officer called Thomas's telephone number on February 8, 2024, and February 12, 2024, and left voicemail messages requesting a return call. The probation officer also called Thomas's sister on February 12, 2024, and left a voicemail message asking for a return call from either Thomas or her. No one returned these calls. In response, the probation officer visited Thomas's residence the next day and again no one was at home. The officer also called Thomas's telephone number again and only got his voicemail. Finally, on February 14, 2024, the probation officer confirmed that Thomas was not a patient at any hospital or health care facility in the region, was not an inmate in any Virginia or North Carolina correctional facility, and was not listed as deceased by the Virginia Office of Chief Medical Examiner.

On February 8, 2024, and February 14, 2024, the probation officer filed with the trial court MVAs setting forth these attempts to locate and contact Thomas. In each addendum, she asked the trial court to add the allegation that Thomas had violated Condition 11 of his probation by absconding from supervision. In the February 8, 2024 MVA, the probation officer also asked to amend the previous allegation of a Condition 4 violation to a Condition 6 violation (failing to report for a scheduled probation appointment). Finally, on April 17, 2024, the probation officer filed a MVA informing the trial court that, on March 28, 2024, Thomas was arrested for a probation violation in an adjacent jurisdiction. The officer also confirmed that she had had no contact with Thomas since November 2023.

At a second revocation hearing on April 24, 2024, neither the Commonwealth nor Thomas expressed any disagreement with the facts recited in the January 8, 2024 MVR and the three February 2024 MVAs. Rather, Thomas, by counsel, proffered his evidence, which the Commonwealth accepted. In this proffer, Thomas told the trial court that he had no place to stay and "no real job available for him" when he was released from confinement in October 2023; however, since that time, he "was able to put aside some money because of a grant that he [had] received." Thomas further stated that he intended to use that money to pay "towards his obligation" of restitution in the case. He also told the trial court that he intended to stay with his uncle so that he "will have stable housing" and "money to go towards his obligations."

Following Thomas's proffer, the Commonwealth presented no additional evidence and the parties argued their respective positions on the rule to show cause. Thomas asserted that the Commonwealth failed to prove that he violated a "non-technical condition" by "not paying his restitution." He noted that his period of supervised probation did not expire until 2025 and "[t]here [was] nothing" in the MVR or any of the MVAs requiring him to make monthly payments or setting forth a timeframe for making monthly payments. He thus argued that "the

- 5 -

implication [was] that he ha[d] until the end of his probationary period" to pay off his restitution and, therefore, there could be no violation of the non-technical condition "until that expiration date comes by." With respect to the allegation that he had absconded from supervision, Thomas argued that this conduct was a technical violation and, therefore, the 14-day sentencing limitation applied.

The Commonwealth, on the other hand, argued that Thomas's failure to pay any restitution was a violation of a special condition of his probation. In support, it made two points. First, while acknowledging that, in 2015, the trial court was not obligated to order a restitution payment plan that "outline[d] the payment term," the Commonwealth pointed out that the trial court "always had payment plans available on request" and, "[i]f [a defendant] ma[d]e the regular payments required" by a payment plan, "[i]t was just assumed that would be an obligation of probation." Second, the Commonwealth pointed out that Thomas had made "no payments whatsoever" since the original sentencing hearing and this fact "show[ed] a good faith belief that he [was] in violation of that condition of his probation." The trial court agreed with the Commonwealth and reasoned as follows:

> Once he is ordered to make the payments, he knows he is not going to be allowed to wait for eleven years not to make any kind of payment. That is part of the deal, you start making your victim whole. I think that's understood.

Afterwards, in his allocution, Thomas told the trial court that he had been incarcerated during most of the years after his original sentencing hearing because he got out of prison in 2020 and he "got locked back up" in 2021. By his estimate, he only had been out of prison for about a year.

Following the allocution, the trial court noted that, according to the MVR, Thomas timely reported to probation on November 16, 2023, but had a positive urine screen for drugs. It also noted that Thomas did not report to probation again for a "substantial period of time."

- 6 -

Afterwards, the trial court found that Thomas was guilty of violating the special condition of his probation and, therefore, the statutory limitation on sentencing for a probation violation did not apply. It then revoked Thomas's two previously suspended sentences totaling 34 years and 8 months and resuspended all but 1 year. It also extended Thomas's probation for a period of one year after release. By an order entered on May 6, 2024, the trial court imposed these sentences. This appeal follows.

ANALYSIS

Thomas presents a two-pronged appeal. First, he assigns error to the trial court's finding that he violated a special condition of his probation by "not yet paying" any of the restitution ordered at his sentencing in August 2015. He contends that this finding was in error because the trial court's sentencing order imposed no deadline for paying any restitution before the end date of his probation. Second, given this erroneous finding of a non-technical violation, Thomas assigns error to the trial court's decision to impose an active prison sentence exceeding 14 days, the statutory maximum punishment for his undisputed technical violations that involved unlawfully using controlled substances and absconding from supervision. As explained below, we conclude that the first assignment of error has merit and, therefore, we need not address the second.[4]

"The 'revocation of a suspended sentence lies in the discretion of the trial court and that . . . discretion is quite broad.'" *Clarke v. Commonwealth*, 60 Va. App. 190, 195 (2012) (alteration in original) (quoting *Peyton v. Commonwealth*, 268 Va. 503, 508 (2004)). On appeal from a revocation proceeding, "[t]he evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013). "[T]he trial court's 'findings of fact and judgment will not be reversed unless there is a

---

[4] "As we have often said, 'the doctrine of judicial restraint dictates that we decide cases "on the best and narrowest grounds available."'" *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020).

clear showing of abuse of discretion.'" *Id.* (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). An abuse of discretion occurs "only when reasonable jurists could not differ." *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005). Also, "by definition, a trial court 'abuses its discretion when it makes an error of law.'" *Khine v. Commonwealth*, 75 Va. App. 435, 444 (2022) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)).

"In evaluating whether a trial court abused its discretion, . . . 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009) (quoting *Beck v. Commonwealth*, 253 Va. 373, 385 (1997)). "[This] abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)). Nevertheless, "[t]he exercise of judicial discretion 'implies conscientious judgment, not arbitrary action.'" *Rhodes v. Commonwealth*, 45 Va. App. 645, 650 (2005) (quoting *Slayton v. Commonwealth*, 185 Va. 357, 367 (1946)).

Code § 19.2-306 provides that, whenever a trial court has suspended the execution or imposition of a sentence, it "may revoke the suspension of sentence for *any* cause [it] deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A) (emphasis added). Upon determining that a defendant has violated the terms of a suspended sentence, the trial court may revoke that suspension and "impose a sentence in accordance with the provisions of [Code] § 19.2-306.1." Code § 19.2-306(C). Thus, the statutory power of the trial court to revoke a suspended sentence is broad, but "it is not without

limitation." *Duff v. Commonwealth*, 16 Va. App. 293, 297 (1993). "The cause deemed by the court to be sufficient for revoking a suspension must be a *reasonable* cause." *Id.* (emphasis added) (quoting *Hamilton v. Commonwealth*, 217 Va. 325, 327 (1976) (per curiam)). Accordingly, Code § 19.2-305.1(G) states as follows:

> Unreasonable failure to execute the [restitution payment] plan by the defendant shall result in revocation of the probation or imposition of the suspended sentence. A hearing shall be held in accordance with the provisions of this Code relating to revocation of probation or imposition of a suspended sentence before either such action is taken.

Thus, when both Code § 19.2-305.1 and Code § 19.2-306 are applied, "the requirement of Code § 19.2-305.1[(G)] that only 'unreasonable' failure to pay restitution shall result in revocation of a suspended sentence restricts the scope of the court's authority under Code § 19.2-306 to revoke a suspension for 'any cause' deemed by it sufficient." *Duff*, 16 Va. App. at 298. "In short, a reasonable failure to pay restitution negates a reasonable cause to revoke a suspended sentence." *Id.*

In this case, while recognizing our duty to show deference to the trial court as finder of fact we conclude that the trial court abused its discretion in convicting Thomas of violating the restitution condition of his probation and suspended sentences. Even when viewed in the most favorable light for the Commonwealth, the evidence was insufficient for any rational jurist to find that Thomas had a court-ordered obligation to pay any sum towards restitution, either in installment payments or in a lump-sum payment, at any time before the April 24, 2024 revocation hearing.

The facts in this case are not in dispute. The trial court's August 5, 2015 sentencing order contained no date certain on which a full or partial payment of restitution was due. It merely stated that Thomas "shall pay restitution in the amount of $600.00 with interest from October 10[], 2013 until paid in full." The order also stated that "[r]estitution shall be paid prior

to the payment of fines and costs[,]" but it contained no date certain for the payment of fines and costs either. Indeed, the order was silent as to when, how, and to whom Thomas should remit payment(s) to satisfy his restitution obligation and this silence continued long after the sentencing hearing.

As the record indicates, after August 5, 2015, there was no mention of restitution in the case until January 8, 2024, when the probation officer filed her MVR with the court. In that report, the officer merely said that, "[a]s of January 8, 2024 [Thomas] ha[d] made no restitution payments and continue[d] to owe $600.00." The officer did not indicate whether Thomas had entered into a payment plan agreement and did not explain why the officer alleged a probation violation for failure to pay any restitution "[a]s of January 8, 2024" and why the officer had not alleged a similar violation earlier. In fact, in the first MVR filed after the August 5, 2015 sentencing hearing, the probation officer stated that Thomas's plan of supervision was to comply with "standard conditions of probation # 1 through # 11 and pay on fines and cost[s]." The officer did not mention payment of restitution.[5] Thus, stated bluntly, the record is devoid of any evidence that anyone thought about the $600 between 2015 and January 8, 2024, and, even after that date, there is no evidence that anyone asked Thomas to begin making payments toward satisfaction of his restitution obligation.

At Thomas's first revocation hearing on October 2, 2023, the issue of Thomas's failure to pay any restitution was not before the trial court. Neither the June 6, 2023 MVR nor the August 3, 2023 MVA raised the issue, and the trial court did not mention it in its sentence revocation order entered on December 19, 2023. During the second revocation hearing on April 24, 2024, the issue of restitution was the main issue. However, no evidence presented shed much light on

_____

[5] Even if the probation officer had orally ordered Thomas to make restitution payments that would not be sufficient here, as that would constitute a technical violation for failing to follow a probation officer's orders.

- 10 -

whether, to what extent, and in what manner Thomas was obligated to pay any amount of restitution at any time before the probation officer's January 8, 2024 MVR. Thomas merely made his proffer concerning an apparent ability to pay toward his "obligations," and the trial court found him guilty of violating his probation after briefly expressing its agreement with the Commonwealth's argument. But in that brief statement, we find the root cause of the trial court's erroneous ruling. The trial court thought that Thomas, upon being ordered to pay restitution, understood that he needed to "start making [his] victim whole." Yet, as the transcript of the August 3, 2015 sentencing hearing and the August 5, 2015 sentencing order indicate, the trial court did not provide Thomas with any understanding as to how and when he needed to start making his victim whole.

To be sure, in 2015, Code § 19.2-305.1 did not require the trial court to specify "the date by which all restitution is to be paid [and] the terms and conditions of such repayment." Code § 19.2-305.1(E). By failing to do so, however, the trial court entered a sentencing order and subsequent revocation orders that failed to convert its assumptions and expectations into probationary requirements. Hence, the trial court's sentencing order in this case illustrates the wisdom that the legislature later displayed in amending Code § 19.2-305.1 to include subsection E. This wisdom also is similar to the wisdom that the Supreme Court expressed in discussing the prerequisite for finding a person guilty of contempt for failing to obey a court order. It stated that, "[a]s a general rule, 'before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied.'" *Winn v. Winn*, 218 Va. 8, 10 (1977) (quoting *Wood v. Goodson*, 485 S.W.2d 213, 217 (Ark. 1972)). In other words, "[t]he process for contempt lies for disobedience of what is decreed, not for what may be decreed." *Id.* (quoting *Taliaferro v. Horde's Adm'r*, 22 Va. (1 Rand.) 242, 247 (1822).

Here, the trial court erred in finding Thomas guilty of disobeying what it could have decreed, but did not decree.  Other than the five-year probation period ordered in August 2015, neither the trial court's sentencing order nor the subsequent revocation orders specified minimum payment or frequency requirements or any other guidelines or deadlines for Thomas's restitution obligation.  Simply put, the order establishing Thomas's restitution obligations lacks definite terms to sufficiently place Thomas on notice as to this important condition of probation.  Consequently, his failure to complete or even commence restitution payments at the time of the revocation hearing cannot be considered unreasonable and fails to provide a reasonable cause to revoke his suspended sentences.

However, because Thomas does not challenge the trial court's finding that he also violated technical conditions of his probation, he is only entitled to a resentencing.  Accordingly, we reverse the judgment of the trial court and remand the case for resentencing.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is reversed and the case is remanded for resentencing.

*Reversed and remanded.*